BANK OF OROVILLE v. LAWRENCE et al. (LAW-RENCE, Intervener).

No. 18,257; October 1, 1894.

37 Pac. 936.

**Trial—Special Findings.—If a Discrepancy Exists** between the general finding and the more specific findings of particular facts, the latter must control.

**Pleading—Ambiguity.—Where an Instrument Which is in Legal** effect a mortgage and not a deed of trust is set out in full in the complaint, the fact that it is there designated a "trust deed so being and operating as a mortgage" does not create an ambiguity in the pleading.

**A Mortgage Given to Secure Advances Up to a Certain Sum,** if duly recorded, takes precedence of a subsequent attachment, to the extent of any balance due on such advances up to said sum.

APPEAL from Superior Court, Placer County; M. K. Harris, Judge.

Action by the Bank of Oroville against George H. Lawrence and Nellie L. Lawrence.   W. J. Lawrence intervened. Plaintiff had judgment and defendants and intervener appeal.   Reversed.

John Gale for appellants; Harris & Lloyd for respondent; Reardan & White for intervener.

VAN FLEET, J.—This action was brought to foreclose an instrument in the nature of a mortgage given by defend-

ants on certain real and personal property to secure the repayment of advances, which, by its terms, plaintiff was to make to the defendant George H. Lawrence, by paying his overdrafts to the amount of $1,800. The complaint alleges the making of advances in the aggregate of $4,449.76, the repayment of $3,278.86, and a balance due plaintiff of $1,218.90, with interest in the sum of $47.65. A demurrer by defendants was overruled, and they answered, admitting the making of the mortgage, but denying that there was any indebtedness due. There was an intervention by one W. J. Lawrence, claiming a prior lien on the mortgaged property by virtue of an attachment levied in a suit against the defendant George H. Lawrence. The court found in favor of plaintiff in the amount claimed, and in favor of the right of the intervener to a prior lien upon the personal property, but postponing his lien upon the realty to that of the plaintiff, and a decree was entered accordingly. The defendants appeal from the judgment, and the intervener from so much thereof as postpones his lien upon the real property. The appeals are based upon the findings alone.

From a mass of probative facts found, it appears in substance that the defendant George H. Lawrence, who was a butcher in the town of Oroville, desiring to buy a band of beef cattle which were for sale, and being without ready money to make the purchase, applied to the plaintiff bank. The price of the cattle was $1,600, and the bank agreed, in consideration of the making of the mortgage in suit, to furnish the money to pay for the cattle, and to advance Lawrence $200 besides, making in all the sum of $1,800; the arrangement being that the bank should take the bill of sale of the cattle in its own name, and hold it as additional security for its advances. The mortgage was accordingly executed, and on the same day that it was delivered, February 17, 1893, Lawrence drew his check on the bank for $1,800, which was honored by the bank, giving to the agent having charge of the cattle its draft for $1,600, and taking the bill of sale, and paying to Lawrence $200 in cash. For some reason, however, which does not clearly appear, the agent was unable to make delivery of the cattle, the sale fell through, and the $1,600 draft was returned to the bank on February 20th, without having been negotiated or cashed. On February 23d, Law-

rence paid into the bank $100, and subsequently, to adopt the language of the finding, ''on the 25th of said month of February the plaintiff, recognizing that defendant George H. Lawrence had received no benefit through the attempted purchase of said band of cattle, honored his overdrafts under the terms of said trust deed or mortgage to the extent of four hundred and sixty-five and eleven hundredths dollars ($465.-11) and in like manner, on the twenty-seventh day of said month, advanced the further sum of three hundred and ninety-five dollars ($395), and in like manner, on the 1st day of the following month of March, the further sum of $32.15. That on the third day of said month of March the defendant deposited with plaintiff the further sum of one hundred and forty dollars ($140), thus leaving him indebted to the bank, upon a simple money basis, in the sum of eight hundred and fifty-two and twenty-six hundredths ($852.26), saying nothing of interest.''   On the 4th of March the parties were informed that the beef cattle for which they had negotiated could be purchased, and upon the promise of Lawrence that he would repay plaintiff the $852.26 already advanced, by the 6th of March, plaintiff advanced and paid the $1,600 for the cattle; taking the bill of sale in its own name, and the cattle into its possession, as originally agreed. Lawrence did not, however, pay the $852.26 as promised, and plaintiff then required him to pay in cash for the cattle at the rate of $30 per head, as he received them from plaintiff's possession, and on these terms the cattle were eventually delivered to and slaughtered by Lawrence. It is further found that on May 27th the plaintiff advanced and paid for Lawrence the sum of $95.80 to discharge certain attachment claims against the mortgaged property. The above facts, with others of an immaterial character, are all found in finding 5. It is then found, in finding 6, ''that, in view of all the deposits and payments made by said George H. Lawrence, the balance of the account on the twenty-ninth day of May, 1893 (the date of the commencement of this action), stood in favor of plaintiff and against said defendant in the sum of one thousand two hundred and eighteen and ninety hundredths dollars ($1,218.90) principal, besides the sum of ($46.05) forty-six and five hundredths dollars interest, at the rate of one per cent per month as provided in said trust deed, and that the

same was long overdue and payable from said defendant George H. Lawrence to plaintiff, by virtue of the terms of said overdrafts or checks, and as well also by virtue of said demand for payment of date of March 7, 1893.''

The main question presented is whether the findings support the judgment, and we think it manifest that they do not. Under the issues raised the ultimate facts to be found were as to the amount of the indebtedness, if any, and whether the same was due. It is true that the court, in finding 6, finds the balance of the account to be $1,218.90 in plaintiff's favor, with certain interest, and that by the terms of the overdrafts the same was due; but it is perfectly evident that this finding is merely a conclusion drawn from the antecedent specific facts found in finding 5, and it will be as readily seen that these facts do not sustain the conclusion, either as to the amount of the balance standing in plaintiff's favor, or as to the fact of its being due. These findings being inconsistent, we must look to the specific facts rather than the general conclusion to find support for the judgment, upon the well-settled principle that if a discrepancy exists between a general finding and the more specific findings of particular facts the latter must control. Looking at finding 5, it is apparent that the lower court was under a misapprehension of the effect of the transaction in including, as one of ·the advances made by plaintiff, the $1,600 draft or bill of exchange given February 17th. The sale of the cattle having fallen through at that time, and the draft having been returned to the bank and never paid, it did not constitute an advance under the mortgage, since the sum was never in fact withdrawn from the funds of the bank. This, then, left but the $200 paid to Lawrence as the amount actually advanced on February 17th. Subsequently other advances were made, which gave a balance on March 3d of $852.26 owing plaintiff, these advances being clearly within the terms of the mortgage, because less in amount than $1,800. On March 4th the plaintiff advanced and paid the $1,600 for the cattle. This advance, in excess of the security afforded by the mortgage, was made partly in consideration of the promise by Lawrence to pay back within two days the balance of $852.26 then standing against him. This, however, he did not do, and thereupon the plaintiff required Lawrence to pay for the cattle as he got them. Right

here the finding is indefinite and obscure on the point as to whether Lawrence received any of the cattle without paying for them.   It is possible he may have done so before the plaintiff made the requirement that he pay cash. · If he did pay for them all at the rate of $30 per head, he must have paid back all and a little more than their purchase price, since there were fifty-five head in the lot.   If the fact is that there remained any unpaid portion of the sum advanced for the cattle, it should be distinctly found, in order to strike a correct balance.   As the findings leave the account, the most that can be found against the defendant is the item of $852.26, due March 3d, and the $95.80 advanced May 27th to discharge attachments, making $948.06.   There is no way that we can discover, under the facts found, by which the balance arrived at by the court can be figured out.   Nor is there any sufficient finding as to the balance due when the action was commenced. Here, again, the specific facts found do not support the conclusion stated in finding 6.   As to the $852.26, the promise of Lawrence to repay that amount on March 6th was for a good consideration, and that sum became due at that date. But there is nothing whatever in the findings to show any understanding or agreement, as required in the mortgage, as to when the $1,600, or any part of it, or the item of $95.80 subsequently advanced, should be repaid; and as the $852.26 cannot be traced into the final balance struck, the judgment cannot be supported, because there is nothing to show that that balance was due when the action was commenced.   There being no basis, in view of the uncertainty of the findings, for a modification of the judgment, the case will have to be sent back for a new trial.

There is no other point requiring extended notice.   The demurrer of defendants to plaintiff's complaint was properly overruled.   The instrument sued on, while having the form of a deed, and purporting in terms to convey the title to the property, shows upon its face that it was intended as, and in legal effect is, a mortgage, and not a deed of trust: Koch v. Briggs, 14 Cal. 256, 73 Am. Dec. 65.   Being set out in full in the complaint, the fact that the pleader designates it as a "trust deed so being and operating as a mortgage" does not create an ambiguity or uncertainty in the pleading, since its character is to be determined from its terms.   The allegation

"that all said advances made by way of payment of said overdrafts were by the terms thereof, and so became immediately due and payable," is not a conclusion of law, but is, while awkwardly expressed, a sufficient allegation of the ultimate fact. The statement published by the plaintiff corporation was substantially sufficient to bring it within the law, and the court did not err in so holding. Nor did the court err, under the facts found, in postponing the lien of the intervener to that of the plaintiff upon the real estate. While the plaintiff never acquired a lien upon the personalty by virtue of his mortgage, he did upon the realty; and, the attachment of the intervener having been levied subsequently to the recordation of the mortgage, the lien of the latter took priority, to the extent of any balance found due plaintiff up to $1,800, since the fair construction to be put upon the terms of the mortgage is that it was a continuing security for any balance of advances or overdrafts not exceeding $1,800. Judgment reversed and cause remanded for a new trial.

. We concur: Harrison, J.; Garoutte, J.